IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,
  Plaintiff,

v.              No. 24-CR-62 MIS

COREY PATRICK SAFFELL,
CEASER ENRIQUE MENDOZA,
and ROBERT EDWARD EMBLY,
  Defendants.

### CRIME VICTIMS' MOTION FOR A FINDING THAT THE UNITED STATES VIOLATED THE CRIME VICTIMS' RIGHTS ACT, 18 U.S.C. § 3771(a)(5), AND TO DEFER RULING ON ANY MOTION TO DISMISS UNTIL THE VIOLATION IS REMEDIED

The family of Hector Nava—his mother, four sisters, and daughter (collectively, the "Nava Family")—through undersigned victim-advocate counsel, respectfully move this Court, pursuant to 18 U.S.C. § 3771(d)(3), for an order finding that the United States **has violated** the Nava Family's right to confer with the attorney for the Government under 18 U.S.C. § 3771(a)(5), and directing that the Court defer ruling on any motion by the United States to dismiss this case until that violation has been remedied through genuine, meaningful conferral. In support, the Nava Family state as follows.

### INTRODUCTION

The Crime Victims' Rights Act (CVRA) guarantees victims "[t]he reasonable right to confer with the attorney for the Government in the case." 18 U.S.C. § 3771(a)(5). That right is not a formality to be checked off after the Government has already acted—it exists so that victims may inform the Government's decision *before* it is made. The Government violated that right here. On the afternoon of August 5, 2026, the Government did not seek the Nava Family's input on whether to seek dismissal of the convictions against the men who killed Hector Nava. It informed them, after the fact, that "the office **has decided**" to do so (Email from Maria re Decision at 1), and then gave the family a same-afternoon window—"before 3 p.m."—to speak with a prosecutor who, by the Government's own admission, was not even the office's decision-maker on the question (Email from Maria re Decision at 1; *U.S. v. Embly/Mendoza* at 2). The

individual the family identified as the actual decision-maker, First Assistant United States Attorney Ryan Ellison, was unavailable, and the Government would not commit even to make him available by telephone (*U.S. v. Embly/Mendoza* at 1-2). When counsel asked the Government to delay its filing so the family could be meaningfully heard, the Government refused to commit to any delay at all (*U.S. v. Embly/Mendoza* at 3).

This was not conferral. It was notice, dressed up as conferral, timed and structured so that nothing the family said could change the outcome. The CVRA does not permit the Government to announce a decision, set its own filing deadline that same day, and call the resulting scramble a "reasonable" opportunity to be heard. The Nava Family ask this Court to say so plainly, and to withhold action on any motion to dismiss until the violation is cured.

## FACTUAL BACKGROUND

1. Hector Nava died in custody following his encounter with the defendants. Because Mr. Nava is deceased, his family members assume his rights under the CVRA. 18 U.S.C. § 3771(e)(2).

2. A jury convicted the defendants. Defendant Mendoza moved for a mistrial, and the Government filed a response stating that it did not oppose a new trial. On August 3, 2026, the Nava Family and undersigned counsel met with Assistant United States Attorney Maria Armijo "as is their right under the Victim's Rights statute to better understand the Government's non opposition to the Defendant's motion for a new trial" (*U.S. v. Saffell et al* Summary Email at 1). The family expressed that they were "very disappointed and upset with the government's non-opposition to the motion for new trial" and voiced "their opposition to the Government giving up this fight without the appeal process" (*U.S. v. Saffell et al* Summary Email at 1). That conferral concerned the Government's position on the new-trial motion, not the far more consequential decision to abandon the case entirely.

3. The Court denied the motion for a mistrial.

4. On August 5, 2026, at 1:12 p.m.—with no advance warning to the family that dismissal was even under consideration—AUSA Armijo emailed undersigned counsel: "given the Court's denial of

the motion for mistrial, I wanted to make you aware that the office has decided to move for a dismissal of the case for similar reasons outlined in our response to the motion for mistrial." (Email from Maria re Decision at 1). The email announced a completed decision. It did not ask the family's views.

5. The same email continued: "Pursuant to 18 U.S.C. Sec. 3771(a)(5), the family has a right to confer with me regarding this decision. We intend to file the motion this afternoon given that sentencing is tomorrow. Will you please speak to the family and set up a time (ideally before 3 p.m.) so that they have an opportunity to speak to me prior to the filing. This can be telephonic." (Email from Maria re Decision at 1). The Government thus gave the family, at most, a few hours to prepare to discuss the abandonment of jury convictions in the killing of their son and brother—with sentencing set for the very next day (Email from Maria re Decision at 1).

6. At 1:59 p.m., undersigned counsel responded: "This is an unprecedented revelation and I need time to discuss it with my clients. They will definitely want to confer with the government before you file your motion and we request appropriate time to do so. Will you delay filing to allow the family to consult?" (*U.S. v. Embly/Mendoza* at 3). The Government did not agree.

7. On the family's behalf, counsel also requested that First Assistant United States Attorney Ryan Ellison, "who I understand is the ultimate decision-maker in the office, be present at the meeting this afternoon" *(U.S. v. Embly/Mendoza* at 2). The Government responded that "Mr. Ellison is out of the office (out of town) today attending meetings that are scheduled for today and tomorrow" (*U.S. v. Embly/Mendoza* at 2). When counsel asked whether Mr. Ellison could attend by telephone, the Government offered nothing more than that it would "check his schedule but he is in meetings" (U.S. v. Embly / Mendoza at 1). The family was never given access to the person with authority to act on what they said.

8. By its own words, the Government (1) had already decided to seek dismissal before contacting the family; (2) set a same-afternoon deadline of its own choosing to "confer" before filing; (3) declined to make its actual decision-maker available, in person or by telephone; and (4) refused to commit

3

to any delay when the family's counsel asked for one. Each of these facts, standing alone, would raise a serious question under § 3771(a)(5). Together, they establish that no genuine conferral occurred.

9. The in-person meeting the Government offered on August 5, 2026 confirmed, rather than cured, the violation described above. During that meeting:

   a. AUSA Armijo confirmed that the decision to seek dismissal was made "after the judge's order" denying the mistrial motion came out. When counsel asked whether the decision was made immediately after the order, she would only repeat that it was made after the order had come out, and declined to be more specific.

   b. AUSA Armijo stated that an appellate attorney, Emil Kiehne, reviewed the case as part of a team that decided to file the motion to dismiss because that team would not support the convictions on appeal. She repeatedly referenced Mr. Kiehne and made vague references to an appellate division team involved in evaluating whether the case would be supported on appeal, but would not provide a complete list of who participated in the decision.

   c. AUSA Armijo admitted that she had already contacted attorneys Hart and Clark by telephone to seek their positions before meeting with the family. She refused to disclose the substance of that conversation and stated that she did not believe the family needed to know what was discussed, while simultaneously maintaining that she was "officially" required to seek the family's position.

   d. AUSA Armijo stated that the motion to dismiss was already drafted, though not yet filed, and that it would be filed "soon." She stated that the motion needed to be filed before 5:00 p.m. that day. The family did not leave the meeting until approximately 5:10 p.m.—after the deadline the Government had set for its own filing.

   e. When asked directly, AUSA Armijo would not answer whether she was being directed or instructed to file the motion to dismiss. When asked repeatedly who approved the decision or the strategy behind it, she did not answer and did not identify any approving official.

4

f.  AUSA Armijo stated that in twenty-two years with the office, she did not recall ever filing a motion to dismiss the day before a scheduled sentencing. When asked whether she recalled any colleague having done so, she declined to answer.

g.  When counsel asked whether, even in the worst-case scenario of an adverse appellate ruling, the result would simply be the new trial the Government had already agreed not to oppose, AUSA Armijo did not meaningfully dispute the premise but returned to her position that the appellate division would not support the convictions on appeal.

h.  The family pleaded with AUSA Armijo to pursue justice on their behalf. She was unmoved. Throughout the meeting, AUSA Armijo was combative with the family. After several questions from counsel, she became visibly frustrated and stated that she would not answer any further questions, ending the family's opportunity to be heard.

10.  The meeting thus confirmed each of the deficiencies described above: the decision was made before the family was consulted; the Government set and enforced its own filing deadline without regard to whether the family had finished being heard; the individuals who actually approved the decision were never identified or made available; and the Government's own representative could not recall the office ever having taken comparable action on this timeline. What the Government characterized as conferral was, on its own account, a closed decision presented to the family as a fait accompli.

11.  The meeting with the family did not end until approximately 5:10 p.m.—after the 5:00 p.m. deadline AUSA Armijo had cited during the meeting itself. Undersigned counsel retrieved the Government's Unopposed Motion to Dismiss Under Federal Rule of Criminal Procedure 48(a) (Doc. 312) from the docket at approximately 5:35 p.m. the same day, roughly twenty-five minutes after the meeting's conclusion.

12.  The motion itself confirms what the meeting demonstrated. Its "Reasons and facts supporting dismissal" restate, essentially verbatim, the same reasoning already set out in the Government's July 27, 2026, response to the mistrial motion (Doc. 305) and reiterated at the August 4, 2026,

hearing, reasoning developed before the family was ever consulted about dismissal specifically. Doc. 312 at 3-4. Nothing in the motion reflects any input, perspective, or consideration arising from the family's conferral rights; the motion was, in substance, already written in all but final form before the family was given any opportunity to be heard.

13. The motion also confirms that Emil Kiehne, the appellate attorney AUSA Armijo repeatedly referenced during the meeting as part of the team that evaluated the case, *see supra* ¶ 9(b), is listed as the document's author in the filing's own metadata, corroborating the family's account of who was actually involved in the decision the family was never permitted to meaningfully address.

## LEGAL STANDARD

The CVRA affords crime victims "[t]he reasonable right to confer with the attorney for the Government in the case." 18 U.S.C. § 3771(a)(5). Where the victim is deceased, family members "may assume the crime victim's rights." 18 U.S.C. § 3771(e)(2); *see In re Mikhel*, 453 F.3d 1137, 1137 n.2 (9th Cir. 2006) (family members of a deceased victim "are themselves victims for purposes of § 3771"). A victim asserts these rights by motion in the district court where the prosecution is pending, and "[t]he district court shall take up and decide any motion asserting a victim's right forthwith." 18 U.S.C. § 3771(d)(3).

## ARGUMENT

I.   *The Nava Family are crime victims entitled to assert a violation of the right to confer in this proceeding.*

The Nava Family's standing is established by the statute. A "crime victim" includes any person "directly and proximately harmed" by the offense, and when that victim is deceased, "family members" assume the victim's rights. 18 U.S.C. § 3771(e)(2). Courts accordingly recognize that the family members of a deceased victim "are themselves victims for purposes of § 3771" and may assert its rights. *In re Mikhel*, 453 F.3d 1137, 1137 n.2 (9th Cir. 2006). Because a prosecution is pending in this Court, the CVRA's motion mechanism applies directly, and this Court must decide the family's assertion "forthwith." 18 U.S.C. § 3771(d)(3).

## II.    The Government violated the right to confer by announcing its decision before affording the family any opportunity to be heard.

The conferral right is not a courtesy notification, and it is not satisfied by informing victims of a decision after it has been made. Persuasive authority construing § 3771(a)(5) holds that the CVRA requires "that the government confer in some reasonable way with the victims before ultimately exercising its broad discretion," and that victims be "allowed to communicate meaningfully with the government, personally or through counsel, before a deal was struck." *In re Dean*, 527 F.3d 391, 395 (5th Cir. 2008). The purpose of conferral is to let the victim influence the decision while it remains open—not to receive notice after it is made. *Id.*

The Government's own words establish that it did not do this. The August 5 email did not invite the family's views on whether to seek dismissal; it announced that "the office **has decided** to move for a dismissal of the case" (Email from Maria re Decision at 1) and offered only a chance to "speak to me prior to the filing" (Email from Maria re Decision at 1). There is no ambiguity to construe and no missing context that could recast this sequence as anything other than what it plainly was: notice of a completed decision, not conferral before one. Conferral offered *after* the decision is made and directed only at the timing of the filing rather than the substance of the decision, is not conferral "before ultimately exercising [the Government's] broad discretion." *In re Dean*, 527 F.3d at 395. On this record, the violation is not a close question.

## III.    The Government compounded the violation by offering an opportunity that was not "reasonable" in any sense the statute contemplates.

Even if the Government's after-the-fact notice could somehow be recast as an offer to confer, the opportunity it extended fell far short of "reasonable" within the meaning of § 3771(a)(5). The Government itself described its decision as unprecedented—the abandonment of jury convictions on charges arising from Hector Nava's death—yet gave the family a few hours' notice, on the same afternoon, to respond before a filing it intended to make that day, with sentencing set for the next morning (Email from Maria re Decision at 1). Counsel immediately objected that this was "an unprecedented revelation" requiring time

"to discuss it with my clients," and asked the Government to "delay filing to allow the family to consult" (*U.S. v. Embly/Mendoza* at 3). The Government refused to commit to any delay.

The Government compounded this further by declining to make its actual decision-maker available. The family asked that First Assistant United States Attorney Ryan Ellison, whom counsel identified as "the ultimate decision-maker in the office," participate, so that conferral would reach the person with authority to act on what the family said (*U.S. v. Embly/Mendoza* at 2). The Government's response was that Mr. Ellison was "out of the office (out of town)" and, when asked whether he could join by telephone, that it would merely "check his schedule" (*U.S. v. Embly/Mendoza* at 2; *U.S. v. Embly/Mendoza* at 1). A family given a few hours to speak with a prosecutor who cannot revisit the decision, about a decision already made, has not been afforded a right whose entire purpose is meaningful, timely input before the Government acts. *See In re Dean*, 527 F.3d at 395. Under any reasonable construction of the statute, this was not a reasonable opportunity to confer. It was merely the appearance of one.

The August 5 in-person meeting removed any doubt on this point. AUSA Armijo confirmed that the substantive decision had already been made, that the motion was already drafted, and that she had already sought the positions of other attorneys—by her own account, contacted before the family—while declining to disclose what was discussed in that call or to identify who approved the decision. *See supra* ¶¶ 9(a)–(f). She enforced a filing deadline of 5:00 p.m. against the family's own meeting, which did not end until approximately 5:10 p.m., and then ended the meeting outright when the family's questions persisted. See supra ¶¶ 9(d), (h). By AUSA Armijo's own account, in twenty-two years with the office she could not recall the Government ever having filed a motion to dismiss the day before a scheduled sentencing— underscoring that the family was asked to absorb and respond to an extraordinary decision on a compressed and unforgiving timetable of the Government's own making. *See supra* ¶ 9(f). None of this is what "reasonable" conferral looks like.

    **IV.**    *The appropriate remedy is a finding of violation and deferral of any ruling on the Government's Motion to Dismiss (Doc. 312) until the violation is remedied.*

The relief the Nava Family seek is modest, is squarely within this Court's authority, and does not ask the Court to interfere with the Government's ultimate charging discretion. The CVRA does not give victims a veto over the Government's decisions, and nothing in it impairs the prosecutorial discretion of the Attorney General. 18 U.S.C. § 3771(d)(6); *see United States v. Rubin*, 558 F. Supp. 2d 411, 418 (E.D.N.Y. 2008) (the CVRA gives victims "a voice, not a veto"). The family do not ask this Court to order the Government to prosecute or to bar it from seeking dismissal. They ask the Court to call the Government's conduct what it was, and to withhold action until the Government actually complies with the statute.

That is precisely the relief the CVRA contemplates in a pending case, and precisely the relief courts have granted on comparable records. In In re Dean, the Fifth Circuit found that the government had "failed to accord the victims the rights conferred by the CVRA." 527 F.3d at 395. As the en banc Eleventh Circuit has recognized, a victim who complains that the Government acted without conferring "will simply ask the court to decline to take some action" the Government has advocated, or ask the court "to delay the hearing" until the victim's rights are honored—relief that provides "complete relief" without meaningfully impairing prosecutorial discretion, because the court "already has near-plenary control over its own docket." *In re Wild*, 994 F.3d 1244, 1262 (11th Cir. 2021) (*en banc*). A finding of violation, coupled with deferral of any ruling on a motion to dismiss until the Government confers in fact rather than in form, accomplishes exactly that. It also protects the family's related right "to be reasonably heard" at proceedings in this Court. 18 U.S.C. § 3771(a)(4); *see Kenna v. U.S. Dist. Court*, 435 F.3d 1011, 1016 (9th Cir. 2006) (the right to be heard is a right to speak, not merely to submit a writing).

The Government should not be permitted to treat the CVRA's conferral right as an afterthought to be satisfied with a same-day phone call arranged around its own filing deadline. The Government has since filed its Unopposed Motion to Dismiss Under Federal Rule of Criminal Procedure 48(a) (Doc. 312), filed the same day, within roughly half an hour of the meeting's conclusion, and reflecting no input from the family. *See supra* ¶¶ 11-13. That filing does not moot this motion; it is the very action the Nava Family ask this Court to withhold ruling on until the Government complies with § 3771(a)(5). Because the Court must decide a CVRA assertion "forthwith," 18 U.S.C. § 3771(d)(3), and because sentencing remains scheduled

for the next day, the family respectfully request that the Court take up this motion on an expedited basis, defer any ruling on Doc. 312, and make clear that the statute's protections are not optional.

## CONCLUSION

For the foregoing reasons, the Nava Family respectfully request that the Court enter an order: (1) finding that the United States **violated** the Nava Family's right to confer under 18 U.S.C. § 3771(a)(5); (2) directing the United States to provide the Nava Family a genuine and meaningful opportunity to confer regarding its decision to seek dismissal, including with the office official actually exercising decision-making authority; (3) deferring any ruling on the United States' Unopposed Motion to Dismiss (Doc. 312) until that violation has been remedied and the Nava Family have been reasonably heard; and (4) granting such other relief as the Court deems just.

Respectfully submitted,
**LAW OFFICE OF ISRAEL CHAVEZ**
*/s/ Israel Chavez*

Law Offices of Israel Chávez LLC
Israel S. Chávez
P.O. Box 16028
Las Cruces, NM 88004
Telephone: 575-312-6006
attorney@ichavezlaw.com
*Victim-Advocate Counsel for the*
*Family of Hector Nava*

## CERTIFICATE OF SERVICE

I certify that on the date of filing I caused the foregoing to be served on counsel of record for the United States and for the defendants via the Court's CM/ECF system.

*/s/ Israel S. Chávez*
Israel S. Chávez
*Victim-Advocate Counsel for the Family of Hector Nava*

10