IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>**COREY PATRICK SAFFELL,**<br>**CEASAR ENRIQUE MENDOZA,** and<br>**ROBERT EDWARD EMBLY, a.k.a.**<br>"Eddie."<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CRIMINAL NO.: 24-CR-0062-MIS |

**UNITED STATES' RESPONSE TO CRIME VICTIMS' MOTION FOR A FINDING THAT THE UNITED STATES VIOLATED THE CRIME VICTIMS' RIGHTS ACT, 18 U.S.C § 3771(a)(5), AND TO DEFER RULING ON ANY MOTION TO DISMISS UNTIL THE VIOLATION IS REMEDIED**

THE UNITED STATES OF AMERICA hereby responds to the Motion for Finding that the United States Violated the Crime Victims' Rights Act. Doc. 316. The Nava Family alleges that the Government violated their right to reasonably confer with the Government in regard to its filing the motion to dismiss (Doc. 312) because the Government indicated its intention to voluntarily dismiss the case prior speaking with them. As a remedy, the Nava Family requests that the Court defer ruling on the motion to dismiss until the Nava Family and the Government engage in additional conferral.

As explained below, the Government respectfully submits that a violation of the Crime Victims' Rights Act did not occur in this instance. Nevertheless, the Government is committed to ensuring that the Nava Family is given the full opportunity to confer with the Government and express their concerns regarding the Government's proposed disposition of this case. To the extent they believe that has not occurred, the Government remains open to additional meetings.

In fact, prior to the Court ordering appointment of amicus counsel, the Government contacted the Court asking that it hold the motion in abeyance pending its response to this Motion in order to schedule an additional conferral session with the family. After the appointment of amicus, the family indicated via correspondence that they would prefer to wait until amicus counsel concludes his responsibilities before scheduling any additional conferral. The Government agrees with that suggested proposal. Thus, while the family appears to have withdrawn their requested remedy (pending the amicus brief), the Government files this response to clarify the record and because it does not believe a violation of the CVRA occurred under these circumstances.

## I. Background

As the Court is familiar with the record in this case, the Government will limit its factual recitation to those facts relevant to the Nava Family's Motion.

On June 9, 2026, the Court set this matter for sentencing on August 6, 2026. Doc. 288. On July 10, 2026, Defendant Embly moved for a continuance of the sentencing. Doc. 290. A few days later on July 13, 2026, Defendant Mendoza filed a motion for mistrial on the basis of extraneous information being placed before the jury during deliberations and alleged bias by one of the jurors. Doc. 291. Defendant Mendoza moved to join Defendant Embley's motion to continue sentencing. Doc. 294. The Court denied those motions and set the hearing on Defendant Mendoza's motion for mistrial on August 4, 2026, two days before sentencing. Doc. 293.

On July 27, 2026, the Government responded to Defendant Mendoza's motion for mistrial. Doc. 305. The Government did not concede Defendant Mendoza's basis for mistrial but indicated further investigation into the claims would be necessary. However, the Government stated that it had significant concerns regarding the appellate viability of the convictions and

accordingly joined in Defendant Mendoza's requested relief.

On both July 27, 2026 (via videoconference),[1] and August 3, 2026 (in person), counsel of record for the Government met and conferred with the Nava Family regarding the Government's response to the motion for mistrial. At the August 3, 2026, meeting, the family provided the Government their victim impact statements, which the Government promptly filed. Doc. 307.

The matter proceeded to a hearing on August 4, 2026. The Court took the matter under advisement and subsequently issued a minute order denying the motion for mistrial (noting that an order detailing the Court's reasoning would follow) the next day (August 5th) at approximately 9:30am. Doc. 310.

That same day, at 1:12 pm, counsel of record emailed Mr. Chavez to set up another meeting with the family. The Government notified Mr. Chavez of its intention to seek dismissal of the case so that the family would have that information prior to the meeting and would be prepared to express their concerns. Doc. 316 at Ex. 3. However, given that sentencing was the next morning and the Government did not intend to file the motion prior to speaking to the family, the Government indicated its desire to schedule the meeting at the family's earliest convenience, and asked that it be ideally before 3:00pm. *Id.* Mr. Chavez responded that they would be available at 4:00pm, and asked the United States to delay filing the motion. Gov. Ex. 1.[2] Mr. Chavez indicated the family's position that the "final decisionmaker" should be present at this meeting or available over the phone. As was explained to Mr. Chavez, First Assistant United States Attorney Ryan Ellison was not available as he was out of town in meetings. Doc. 316 at

[1] Mr. Chavez informed the United States he would be representing the family on July 27, 2026, following this meeting.
[2] As noted above, the Government already intended to wait to file the motion until after speaking with the family, that is why the Government was initially hoping to meet early that afternoon.

Ex. 4.

The family then met with the Government's counsel of record at 4:00pm. This meeting lasted until approximately 5:10pm.[3] Following the meeting, the Government filed the motion to dismiss at approximately 5:30pm.

Later that evening, Mr. Chavez filed the instant Motion.[4] The Motion fails to mention that the Government told Mr. Chavez (prior to him filing the instant Motion) that although Mr. Ellison was unavailable for that meeting, he intended to drive back from Ruidoso early the next morning (the 6th) to meet with the family in-person prior to the hearing to listen to their concerns. Gov. Ex 2. Consistent with that, Mr. Ellison rearranged his plans, traveled back to Las Cruces that morning, and met with the family at 8:15am for approximately 40 minutes. Mr. Ellison then attended the hearing and subsequently drove back to fulfill his obligations at the HIDTA conference in Ruidoso, New Mexico, that afternoon.

At the sentencing hearing on the August 6th, the Court inquired as to whether the Government needed additional time to respond to the instant Motion. The Government confirmed that it did and the Court continued the hearing.

## II. Argument

The Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771, et seq., is designed to

---

[3] The Government disputes Mr. Chavez's representations that the Government "ended the meeting outright when the family's questions persisted" and that counsel of record was "combative" with the family. Doc. 316 at 8. The Government met with the family for over an hour during which the family expressed their (understandable) frustration and disappointment with the Government's position. The Government would not and does not fault the family for their position and remains willing to allow them space to further express these feelings and concerns. Ultimately, however, the meeting was concluded by Mr. Chavez and not by the Government.

[4] The Motion repeatedly states that Defendants killed Mr. Nava. As set forth in previous Court filings, Defendants were not charged or convicted of killing Mr. Nava or causing his death.

provide a litany of statutory rights to ensure crime victim participation in criminal proceedings. Case law emphasizes that while rights under the CVRA are "broad and expansive" they are "subject to express statutory limits." *United States v. BP Products North America Inc.*, Crim No. H-07-434, 2008 WL 501321, *10 (S.D. Texas Feb. 21, 2008).

One of those rights is the "reasonable right to confer with the attorney for the government in the case." 18 U.S.C. § 3771(a)(5).[5] As noted in *BP Products*, the legislative history of this right indicates that its inclusion in the CVRA is motivated by the policy that "[p]rosecutors should consider it part of their profession to be available to consult with crime victims about concerns the victims may have which are pertinent to the case, case proceedings or disposition." *BP Products*, 2008 WL 501321 at *11. It is not intended to "give the crime victim any right to direct the prosecution." *Id.*; *see also* CVRA, 18 U.S.C. § 3771(d)(6) ("Nothing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction."). Rather, as some courts have noted, it is "to enable victims to obtain information on which to base views to express to the court." *Id.* at *14 (discussing cases tying the right to the ability of victims to obtain information to inform their opinions for allocution). It is furthermore meant to ensure that victims have the opportunity to "convey information to prosecutors." *Id.* at *14.

The CVRA rights are subject to the "express qualifier" of reasonableness. *Id.* at *10. Accordingly, "cases faced with applying the CVRA to specific facts and circumstances carefully examine whether the approach taken or proposed in fact achieved the purposes of the CVRA."

---

[5] The family does not cite authority standing for the proposition that the phrase "attorney for the Government" encompasses any, much less all, attorneys for the Government involved in the decision-making process and the Government could locate no such authority either. Mr. Ellison nevertheless made himself available to meet with the family in-person as soon as he was able.

*Id.* The Attorney General Guidelines for Victim and Witness Assistance provide that "Prosecutors shall make their best efforts to confer with victims in advance of and about major case decisions." Attorney General Guidelines, Section V(G)(1)(a); *see also* CVRA at §3771(c)(1) (stating that prosecutors should make "best efforts" to ensure crime victims are accorded their rights). But the Guidelines recognize that there "may be limited instances where pre-decision consultation with victims may be unreasonable or need to be limited in scope." *Id.* at V(G)(2). One such enumerated factor is "[t]ime constraints imposed on the investigation or case, such as whether time is of the essence in negotiating or entering a proposed plea agreement." *Id.* at Section V(G)(2)(c). Ultimately, the Government must use their best efforts to confer with victims "at a time that will enable the victims to exercise [that] right meaningfully." CVRA § 3771(c)(1).

In this case, the family alleges that the Government did not meaningfully confer with them prior to making its decision to seek dismissal of the case. The Government respectfully submits that it made best efforts to confer with the family prior to filing its motion given the time constraints it faced to timely file the motion.

As noted above, the Court denied the motion for mistrial at approximately 9:30am on August 5th, the day before the sentencing hearing. Approximately four hours later, the Government notified the family via email of its intention to seek dismissal. While indicating its intention to seek dismissal, the Government explained that because sentencing was scheduled the next morning, it intended to file the motion that afternoon but wanted to speak to the family *prior* to filing. The Government further emphasized that the family has a right to be heard on the motion before the Court and that the Government "obviously [would] not oppose that in any way." Doc. 316 at Ex 3. The Government then met with the family at 4pm on August 5th for

over an hour and filed the motion after that meeting. Mr. Ellison then traveled in from out of town the following morning to meet again with the family on the morning of August 6th prior to the scheduled sentencing hearing.

In sum, the Government had approximately 24 hours between receiving notice that the motion for mistrial was denied and the sentencing hearing. It acted quickly to provide the family notice of its intention to dismiss and expressed its intention to confer with them prior to filing that motion. It did so in order that the family could be prepared to meaningfully share its concerns when they met with the Government. While both the family and the Government wish that there had been additional space to schedule the conferral, time was of the essence in order for the Government to also timely file the motion to dismiss. *See* AG Guidelines, Section V(G)(2)(c) (stating that "time constraints" may render "pre-decision consultation with victims…unreasonable or…limited in scope").

As noted in *BP Products*, "The purpose of the reasonable right to confer" is not to give victims a right to approve or disapprove a proposed disposition of a case but is "for victims to provide information to the government, obtain information from the government, and to form and express their views to the government and the court." 2008 WL 501321 at *20. As further recognized by *BP Products*, the need for a victim to obtain information from the government is to be better prepared to express their views to a court regarding a proposed disposition in a given matter. *Id.* at *14. On the condensed timeline provided to it, the Government sought, as best as possible, to provide the family the information it needed to make its views known to the government during the conferral session and ultimately to the Court at the sentencing hearing. It accordingly submits that it complied with its obligations under the CVRA.

Regardless, the Government reiterates that it is not opposed to the remedy requested by

the family of additional conferral with the Government. While the Government does not believe it violated the CVRA, the Government is sincerely sympathetic to the effect of the timing this decision had on the family and remains committed to ensuring that the family has a voice in this process.

The Government also understands, however, that the resolution of its motion is in a different posture than when the family filed the instant Motion. Shortly after filing the motion, the family also moved for the appointment of amicus counsel. The family subsequently sent correspondence to the Government stating that any additional conferral could only occur if the Government withdrew its motion to dismiss. Prior to the appointment of amicus, the Government agreed (via correspondence with the family) to ask that the Court hold the motion to dismiss in abeyance pending additional conferral with the family[6] and sent a request to the Court via email to the effect. Shortly thereafter, the Court filed an order granting the request for amicus counsel.

Given the posture of the case following the appointment of amicus, the Government agrees with the family that additional conferral would be most productive following the amicus brief. The Government accordingly understands the family to no longer be asking the Court to defer ruling on the motion to dismiss at this time.

## III. Conclusion

Based on the foregoing, the Government respectfully requests that the Court deny the motion alleging a violation of the CVRA. Regardless of the Court's determination, the Government remains willing to engage in further conferral with the family. The Government agrees with the family that additional conferral would be most beneficial following the filing of

[6] The Government also requested that the conferral session be mediated to ensure productive dialogue. The Government is willing to explain further the basis for that request but it is not necessary to do so in response to the instant Motion.

the amicus brief.

Respectfully submitted,

TODD BLANCHE
Attorney General
RYAN ELLISON
First Assistant United States Attorney

***Electronically filed on 8/19/2026***

MARIA Y. ARMIJO
Assistant United States Attorney
200 N. Church Street
Las Cruces, New Mexico 88001
(575) 323-5290

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification to defense counsel of record on this date.

/s/______________________________
MARIA Y. ARMIJO
Assistant United States Attorney